No. 58,292

JOHN and MARJORIE COGSWELL, *et al., Appellants,* v. SHERMAN COUNTY, KANSAS, *Appellee.*

(710 P.2d 1331)

Opinion filed December 6, 1985.

*Daniel H. Israel,* of Cogswell and Wehrle, of Denver, Colorado, argued the cause, and *John M. Cogswell* and *Laurin D. Quiat,* of the same firm, and *Jeffrey A. Mason,* of Foust and Vignery, of Goodland, were with him on the briefs for appellants.

*Perry Warren,* county attorney, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Tax protesters appeal the ruling of the District Court of Sherman County which held that the intangibles tax, as authorized by K.S.A. 1984 Supp. 12-1,101, is constitutional.

The appellants are tax protesters from Sherman County, Kansas. They own intangible property in the form of money, notes and other evidence of debt. The Sherman County Treasurer assessed against them an intangibles tax for 1983. The residents paid the taxes under protest and filed a request for refund with the Kansas Board of Tax Appeals which was denied.

The tax protesters appealed to the District Court of Sherman

County, Kansas. The district court granted summary judgment for Sherman County holding that the Kansas intangibles tax is not a statewide tax, that the intangibles tax complies with the Kansas Constitution in that it is equal and uniform in each taxing unit, and that the intangibles tax does not incorporate an unconstitutional delegation of power.

On appeal, the tax protesters argue that the present intangibles tax is unconstitutional because it is a statewide tax involving an unlawful delegation of power, and it is not uniform and equal throughout the state.

A history of the intangibles tax in Kansas is provided in detail in *Von Ruden v. Miller*, 231 Kan. 1, 642 P.2d 91 (1982). In that case, this court determined that the Kansas intangibles tax as authorized under K.S.A. 1980 Supp. 79-3109 was a statewide tax and an unconstitutional delegation of legislative authority by the state legislature to local units of government. In response to *Von Ruden*, the legislature repealed 79-3109 and enacted what became K.S.A. 1984 Supp. 12-1,101, the statute questioned in this case.

The tax protesters argue that the present intangibles tax differs from the old intangibles tax in form only and not in substance. Under the old tax, the state imposed a three percent tax which local taxing units received unless their county commissioners adopted a resolution reducing or eliminating the tax. Under the new tax, local governing units must adopt a resolution to impose the tax which must fall within the limitations imposed by the legislature. Otherwise, the procedure is basically the same under both the previous and the present tax. Property owners file returns with the state which determines the amount of tax due. The tax is collected by the county treasurer and reimbursed to the local unit of government. The appellants contend that this gives a statewide character to the present tax, and allows an unlawful delegation of legislative power, and is, therefore, unconstitutional.

In examining the constitutionality of a statute, the statute is presumed to be constitutional. All doubts are resolved in favor of its validity. Before the statute will be declared unconstitutional, it must clearly appear to violate the constitution. It is the duty of the court to uphold the statute under attack, if possible, rather than defeat it. If there is any reasonable way a statute may be

construed constitutional, it should be done. *Von Ruden v. Miller*, 231 Kan. at 3.

The following constitutional and statutory provisions are relevant to this case:

Article 11, § 1 of the Kansas Constitution requires the legislature to provide a uniform and equal rate of assessment and taxation, except it may provide for the classification and the taxation uniformly as to class of motor vehicles, mineral products, money, mortgages, notes and other evidence of debt or may exempt any of such classes of property from property taxation and impose taxes upon another basis.

K.S.A. 1984 Supp. 12-1,101(a) provides that in 1982 or thereafter the board of county commissioners of any county is authorized by resolution to impose a tax for the benefit of the county upon the gross earnings derived from money, notes and other evidence of debt having a tax situs in the county.

Article 2, § 1 of the Kansas Constitution confers upon the House of Representatives and the Senate the legislative power of the state.

Article 2, § 21 of the Kansas Constitution authorizes the legislature to confer power of local legislation upon political subdivisions. This power is discussed in *State, ex rel., v. Hardwick*, 144 Kan. 3, 6, 57 P.2d 1231 (1936). See also *State, ex rel., v. Hines*, 163 Kan. 300, 302-03, 182 P.2d 865 (1947).

The constitution limits the power of legislation conferred to political subdivisions by the legislature to matters of local concern with which the local units of government could be expected to deal more effectively than the legislature. *State, ex rel., v. City of Topeka*, 176 Kan. 240, 245-46, 270 P.2d 270 (1954). Kan. Const. art. 12, § 5 confers home rule power to cities. In *Claflin v. Walsh*, 212 Kan. 1, 7, 509 P.2d 1130 (1973), this court discussed the home rule limitations. It held that the home rule power is subject to optional control by legislative action in four areas, including: (1) enactments of statewide concern which are applicable uniformly to all cities; (2) other enactments of the legislature applicable uniformly to all cities; (3) enactments applicable uniformly to all cities of the same class limiting or prohibiting the levying of any tax, excise, fee, charge or other exaction; and (4) enactments of the legislature prescribing limits of indebtedness.

None of these provisions confer on local governments the power to legislate statewide issues. Local matters under the home rule powers present no constitutional impediment. See *Von Ruden*, 231 Kan. at 11-12.

The taxpayers claim that the test for a statewide concern, as stated in *Von Ruden*, is whether the enactment is applicable uniformly to all subdivisions. They claim that the intangibles tax fits the *Von Ruden* rationale because it is applicable to any city, township or county in the state. In *VonRuden*, the majority of the court determined that under the previous law the state set the levy and, if the local units of government took no action, a statewide levy resulted. The levy set by the state had no relationship to the program or needs of the local units of government. The majority then concluded the intangibles tax was a statewide tax and the legislature had authorized local governments to legislate a local reduction or total exemption from the tax. That authority was an unauthorized delegation of legislative authority to the local units of government by the state legislature.

While it is true that the present statute makes it possible for any city, township or county in the state to enact an intangibles tax for the benefit of that local unit of government, the statute does not require every city, township or county to participate in such a tax. It is left to each governmental entity to determine whether its needs require the levy of a tax. The taxing unit for the intangibles tax is each individual unit of local government—not the state as a whole. Within each taxing unit there is required to be uniformity. The tax is for the benefit of each governmental entity levying such a tax. The provisions of K.S.A. 1984 Supp. 12-1,101 authorizing cities, townships and counties to enact an intangibles tax for the benefit of the local unit of government are neither authorization for a statewide tax nor, under Article 2, § 1 of the Kansas Constitution, an unauthorized delegation of legislative authority to local government.

The tax protesters claim that if the intangibles tax were truly a local matter, the county could impose such a tax without legislative approval. They contend that, because the legislature has authorized such a tax, it must be of a statewide nature.

As noted in *Hardwick*, 144 Kan. 3, however, the legislature has the authority to confer power of local legislation. It has done this in other situations with numerous statutes whereby the legisla-

ture authorizes, but does not require, a local unit of government to impose a tax. Among those are:

K.S.A. 12-1220 *et seq.*, which does not require a municipality to establish a library, but, if one is established by local choice, allows a tax not to exceed a specified number of mills to be levied for its establishment and maintenance.

K.S.A. 12-1680 *et seq.*, which authorizes cities and counties on a local option basis to levy a set mill amount for programs for the elderly.

K.S.A. 12-11a01, which authorizes counties to levy an additional one-half mill to provide additional law enforcement services.

K.S.A. 1984 Supp. 12-187 *et seq.*, which authorizes municipalities to levy a sales tax.

The constitutional maxim which prohibits the legislature from delegating its power to any other body or authority is not violated by vesting cities, townships or counties with certain powers of legislation as to matters purely of local concern. The delegation of certain powers to political subdivisons of government recognizes that governmental subdivisions are usually better judges of their immediate and local needs than the legislature. *State, ex rel., v. City of Topeka*, 176 Kan. at 245-246.

The tax protesters next claim that the intangibles tax is not uniform and equal statewide, and that the Kansas Constitution requires a uniform and equal rate of assessment throughout the state. In *State, ex rel., v. Hayden*, 197 Kan. 199, 205, 416 P.2d 61 (1966), this court stated:

"[Article 11, § 1 providing] for uniform and equal rates of assessment does not require that the levy and amount raised by the tax be the same in each taxing district. The constitution only requires a uniform and equal rate throughout the territory in which the tax is levied and the principle of equality is fully satisfied by making local taxation equal and uniform as to all property within the limits of the taxing district."

In *State ex rel. Schneider v. City of Topeka*, 227 Kan. 115, 605 P.2d 556 (1980), the constitutionality of tax increment financing of programs designed to redevelop blighted business areas in Kansas cities, as authorized by K.S.A. 1979 Supp. 12-1770 *et seq.*, was considered. It was determined that the redevelopment act required any property within a redevelopment area to be assessed and taxed in the same manner as if located outside the area, that Article 11, § 1, of the Kansas Constitution does not

require uniformity in the distribution of tax money, and that where the rate of property assessment is uniform throughout a taxing district, it fulfills the constitutional mandate.

Intangible property is separately classified as an exception to the uniform and equal clause of Article 11, § 1 of the Kansas Constitution but is subject to the requirement that the tax thereon must be uniform within the class. Since the rate of the intangibles tax assessment is uniform and equal within a taxing district, the constitutional requirement of uniform and equal taxation has been fulfilled.

The county attempts to raise other issues on appeal. Those issues were not decided in the trial court, and it is, therefore, unnecessary for us to discuss them.

The district court is affirmed.